UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASALLE TOWN HOUSES COOPERATIVE
ASSOCIATION, *et al.*,

        Plaintiff,

                                  Case No.  12-cv-13747
vs.                                HON. GERSHWIN A. DRAIN

CITY OF DETROIT, acting through its
DETROIT WATER AND SEWERAGE
DEPARTMENT,

        Defendant.
_____/

**ORDER DENYING MOTION TO DISMISS [#22], GRANTING MOTION TO CERTIFY CLASS [#20], FINDING RENEWED MOTION TO CERTIFY CLASS [#38] MOOT, FINDING RENEWED MOTION TO DISMISS [#45] MOOT AND CANCELLING ORAL ARGUMENT AND SETTING STATUS CONFERENCE FOR MARCH 4, 2014**

**I.     INTRODUCTION**

On August 23, 2012, Plaintiffs, apartment buildings, cooperatives, townhouses and condominiums with five or more units, filed the instant action on behalf of themselves and a class of entities similarly situated, against the City of Detroit, acting through its Water and Sewerage Department, for its classification of these properties as commercial for purposes of billing for water and sewage removal services.  Plaintiffs argue that the City's imposition of this higher rate is a violation of the equal protection clause because there is no rational relationship to the classification that justifies applying the higher commercial rate to residential structures with five or more units, versus structures with less units or single family dwellings.  Plaintiffs seek monetary and injunctive relief.

Presently before the Court are the following motions: (1) City's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(c), filed on May 21, 2013, and (2) Plaintiffs' Motion for Class Certification, filed on April 30, 2013. These matters are fully briefed and a hearing was held on July 11, 2013.[1] For the reasons that follow, the Court denies Defendant's Motion to Dismiss and grants Plaintiffs' Motion to Certify Class.

## II.  FACTUAL BACKGROUND

Plaintiffs own and operate town home cooperatives and/or condominiums with five or more residential units in the City of Detroit, which provides water and sewage removal services to Plaintiffs and the potential class members. The City charges Plaintiffs at a commercial rate rather than a residential rate for its water and sewage removal services. Plaintiffs' equal protection claim asserts that charging commercial rates to residential dwellings with five or more units is not rationally related to the City's objective of equally apportioning and collecting fees for its services. Plaintiffs propose the class be defined as:

> All entities or individuals owning, or acting for owners of, buildings, apartment buildings, townhouses, housing cooperatives and condominiums with multiple units and utilized for residential purposes whom and which have been charged at a commercial rate by the City of Detroit and/or the Detroit Water and Sewerage Department for water and sewerage and component services with the time period at least six

---

[1] This action was stayed on July 29, 2013 upon the filing of the City's Chapter 9 Bankruptcy Petition and the automatic stay order entered by Judge Steven Rhodes. This matter was recently reopened pursuant to Judge Rhodes' December 18, 2013 Order granting relief from the automatic stay. On January 27, 2014, Plaintiffs filed a Renewed Motion to Certify Class which is virtually identical to Plaintiffs' original Motion to Certify Class. The Court will consider Plaintiffs' original Motion to Certify Class since the motion is fully briefed and the Court has conducted a hearing on the matter. The motions are practically identical, thus there is no reason to conduct further briefing or oral arguments. As such, the March 4, 2014 hearing is cancelled and Plaintiffs' Renewed Motion to Certify Class is MOOT. Similarly, the City filed a Renewed Motion to Dismiss on February 25, 2014. The City relies on the same arguments as those presented in its original Motion to Dismiss, thus the Court will consider the City's original Motion to Dismiss and finds the City's Renewed Motion to Dismiss MOOT.

years prior to the filing of this action through the date of final judgment or such longer amount of time as may be allowed by law.

This is not the first equal protection dispute between the Plaintiffs and the City concerning the City's collection of fees for its water and sewerage services. In 2007, it appears that most of the Plaintiffs and the potential class members[2] brought suit against the City relative to the City's imposition of an Industrial Waste Control ("IWC") charge on residential dwellings with more than four units. *See Village Center Assoc. Ltd. Dividend Housing Assoc. v. City of Detroit*, No. 07-cv-12963, Hon. John Feikens. The *Village Center* First Amended Complaint asserted that the City classified the plaintiffs and those similarly situated "as commercial and/or apartment buildings, as all have greater than four (4) units." *Id.*, Ex at 2. The City imposed an IWC charge on the basis of this classification, which Plaintiffs argued violated the equal protection clause. *Id.* at 9.

The *Village Center* case was ultimately resolved by a Settlement Agreement upon entry of the Court's Final Judgment and Order on February 3, 2009. Pursuant to the Settlement Agreement, the class in the *Village Center* action consisted of:

> All persons or entities who or which on July 28, 2008 owned a residential property consisting of more than 4 residential units which property, based on water and sewage meters applicable to such property was assessed sewage charges from the Detroit Water Board and Sewerage Department Containing an IWC (Industrial Waste Control) charge at any time from and after June 1, 2001.

*See* Def.'s Mot. to Dis., Ex. E. Under the terms of the Agreement, the City agreed to pay a total sum of $3,000,000.00 in "credits" to Plaintiffs' future water and sewage bills. In exchange for the City's payment in "credits" toward future bills, the Plaintiffs agreed to the following:

---

[2] The parties do not specify how many Plaintiffs and potential class members were class members in the prior action. The City argues the Plaintiffs and proposed class members are identical to the class members in the prior action, while Plaintiffs maintain that the passage of time makes it likely that class members are somewhat different now.

> [T]he lawsuit shall be dismissed with prejudice, and Plaintiffs' [sic] and all settlement class members . . . hereby releases, covenants, not to sue, remises and forever discharges Defendant, as well as its predecessors and successors in interest and present and former affiliates, parents, shareholders, general partners, limited partners, beneficiaries, representatives, heirs, attorneys, agents, employees and assigns (collectively "releasees") from any causes of action, claims, debts, contracts, agreements, obligations, liabilities, suits, claims, damages, losses or demands whatsoever ("claims"), in law or in equity, known or unknown at this time, suspected or unsuspected, which Plaintiffs and the class now have or ever had, or may in the future have, against the releasees, under any legal theory, including but not limited to, claims under equal protection or restitution, attorneys fees and/or costs of suit in connection with such claims, whether or not alleged, arising out of the allegations in or subject matter of the First Amended Class Action Complaint attached to this Preliminary Statement of Settlement Terms.

*Id*.

Plaintiffs filed the instant class action lawsuit on August 23, 2012. This matter was reassigned to the undersigned on December 4, 2012 pursuant to Administrative Order 12-AO-018. On January 16, 2013, this Court conducted a scheduling conference and entered a Pre-Certification Scheduling Order setting deadlines for the parties' briefing on the class action issue and setting a hearing. In the meantime, and prior to the scheduled hearing on Plaintiffs' Motion to Certify Class, the City filed a Motion to Dismiss pursuant to Rule 12(b)(6) and/or 12(c) arguing that this action must be dismissed because Plaintiffs' equal protection claim is barred by the doctrine of *res judicata* and the *Village Center* case.

### A.     Defendant's Motion to Dismiss

#### 1.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Documents

attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). It is well settled that the standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)("For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations . . . of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."). A court will grant a rule 12(c) motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of the facts sufficient to make a valid claim, or if on the face of the complaint plaintiff does not have a claim. *Id.*

### 2. *Res Judicata*

The City argues that Plaintiffs' equal protection claim is barred by the doctrine of *res judicata* based on the *Village Center* case. The City further maintains that the settlement agreement was a dismissal with prejudice on the merits. *See* Def.'s Mot., Ex. D, February 3, 2009 Final Judgment and Order. A claim will be barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies;" (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (1997).

The City provides a single district court case from the Sixth Circuit to support its contention that an earlier dismissal via a consent agreement can bar subsequent claims based on the doctrine

of *res judicata. See Tilmon-Jones v. Bridgeport Music, Inc.*, No. 11-13002, 2012 U.S. Dist. LEXIS 138675, *10-11 (E.D. Mich. Sept. 6, 2012). However, *Tilmon-Jone*s is distinguishable from the present matter because the claims at issue were statutory, rather than constitutional claims like the claim brought here.

Here, the Court declines to expand the doctrine of *res judicata* to include the ability of litigants to prospectively bar claims seeking to enforce and protect fundamental constitutional rights. The City offers no case law, controlling or otherwise, wherein a court applied the doctrine of *res judicata* to a release agreement prohibiting all future constitutional claims. *See Martin v. Pahiakos*, 490 F.3d 1272, 1276-77 (11th Cir. 2007) (order confirming a settlement agreement arising from bankruptcy proceeding qualifies for *res judicata* purposes precluding the debtor from arguing the defense of failure of service of process); *Tilmon-Jones*, 2012 U.S. Dist. LEXIS 138675, at *10-11 (dismissing statutory copyright infringement claims as barred by the doctrine of *res judicata*); *Ford-Clifton v. VA,* 661 F.3d 655, 661 (Fed. Cir. 2011) (barring subsequent claims of wrongful termination based on a prior "full and complete settlement of all issues" in a prior appeal).

Despite the City's argument to the contrary, it appears to this Court that the proper question should be whether the Settlement Agreement's release waiving Plaintiffs ability to access the courts to seek redress for equal protection violations is enforceable under federal law. Plaintiffs rely on *Town of Newton v. Rumery*, 480 U.S. 386 (1987) and its progeny to argue that the Settlement Agreement is unenforceable because it violates public policy. The City has failed to address the impact of *Rumery* in its briefings and declined to do so in its Reply Brief in support of its present motion.[3]

---

[3] The City argues that "Plaintiffs' arguments regarding waiver are not germane to adjudication of the Motion, will not be addressed in this Reply Brief and should not be

In *Rumery,* the United State Supreme Court held that "in some cases these [release] agreements may infringe important interests of the criminal defendant and of society as a whole," however the mere potential for harm is insufficient to justify a *per se* rule of invalidity. *Id.* at 392. In rejecting the First Circuit 's adoption of a *per se rule of* invalidity, the *Rumery* court noted the appellate court's failure to "consider the wide variety of factual situations that can result in release-dismissal agreements." *Id.* The *Rumery* court identified the following factors this Court must evaluate to determine whether Plaintiffs' release and waiver of future constitutional claims in the *Village Center* Settlement Agreement bars their present equal protection claim. Specifically, this Court must consider: (1) whether the agreement was voluntary, (2) whether the agreement was the product of misconduct, and (3) whether the enforcement of the agreement will affect the relevant public interest. *Id.* at 395. The party relying on the defense of release and contractual wavier has the burden of establishing each element by a preponderance of the evidence. *Burke v. Johnson*, 167 F.3d 276, 281 (6th Cir. 1999).

After review of these factors, the *Rumery* court went on to enforce the criminal defendant's "release-dismissal" of his § 1983 claims concluding that he voluntarily entered into the agreement, there was no evidence of misconduct, and there was no adverse impact on the public interest. *Id.* at 398. In reaching this latter conclusion, the Court reasoned, among other considerations, that the rights waived by Rumery were private in nature, noting that "Congress had confined the decision

---

considered by this Court." *See* Reply at 3, fn. 1. The City further argues, in error, that the Sixth Circuit recognizes the overlap between contractual waiver defenses and *res judicata*, however the case cited is from the Federal Circuit. *See Ford-Clifton v.* VA, 661 F.3d 655, 661 (Fed. Cir. 2011). In any event, the Court declines to accept the City's argument that the issue of contractual waiver of constitutional claims is not germane to the instant motion. The City should have responded to Plaintiffs' arguments regarding the impact of *Rumery* and its progeny on Plaintiffs' claims.

to bring [police misconduct §1983] actions to the injured individuals, not to the public at large." *Id.* at 395. Therefore, the Court was hesitant "to elevate more diffused public interests above Rumery's considered decision that he would benefit personally from the agreement." *Id.*

Plaintiffs argue that permitting the release to bar their present claims violates their fundamental right to equal protection under the laws, as well as their First Amendment right to access the courts. Plaintiffs rely on the Ninth Circuit's decision in *Davies v. Grossmont Union High School Dist.*, 930 F.2d 1390 (9th Cir. 1991), which declared a contractual release void as contrary to public policy because it violated the public's fundamental right to elect representatives of their own choosing to public office, among other reasons. *Id.* at 1397. In so concluding, the *Davies* court appears to have employed a heightened standard as compared to *Rumery* stating that "we confront the wavier of [] constitutional rights" which "are generally more fundamental than statutory rights, [thus] a stricter rule than the one embodied by the *Rumery* balancing test may be appropriate in such cases." *Id.*

Here, the Court concludes that to the extent the City relies on the release in the *Village Center* Settlement Agreement as a basis to bar Plaintiffs' present claims, such an argument is premature. As an initial matter, the City has not yet adequately responded to Plaintiffs' arguments relative to contractual waiver, *Rumery* and its progeny. Neither party has had the opportunity to marshal sufficient evidence demonstrating the validity or invalidity of the release agreement. The *Rumery* court made clear that the nature of this defense requires a fact intensive inquiry. *Rumery*, 480 U.S. at 392 ("Most importantly, the Court of Appeals did not consider the wide variety of factual situations that can result in release dismissal agreements."). In *Barden Detroit Casino, LLC v. City of Detroit*, 59 F.Supp.2d 641 (E.D. Mich. 1999), the court ultimately concluded that a developer's release and waiver; required in order to submit a proposal for casino development in

Detroit, barred his subsequent First Amendment, equal protection and substantive due process challenges to the City's ordinance. *Id.* at 644. Before reaching its conclusion, the *Barden* court conducted oral argument, heard testimony, permitted the parties to engage in limited discovery, reviewed briefing and other documentary evidence. *Id.*

On the sparse record before this Court, a determination on the *Rumery* factors and whether the City can rely on the Plaintiffs' release in the *Village Center* case to bar Plaintiffs' equal protection claim does not appear appropriate at this stage of the proceedings.

### 3. Failure to State a Claim

In the alternative, the City argues that Plaintiffs have failed to state an equal protection claim because the City's classification system is rationally related to apportioning the cost of storm water runoff. The City argues that classifying residential complexes based on the number of units is a rational means of apportioning the cost of providing utility services because larger complexes have more square footage, parking lots and impervious surfaces increasing the costs to service these entities.

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Under rational basis review, the governmental policy at issue "will be afforded a strong presumption of validity and must be upheld as long as there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).

Plaintiffs argue that they have stated an equal protection claim and the City's Rule 12(b)(6) argument is premature since legal analysis of this claim will heavily emphasize the applicable facts.

-10-

The case law cited by the City demonstrates that equal protection cases need to be carefully considered after time for factual development. The Court agrees with the Plaintiffs, they have stated a claim under the equal protection clause by asserting that commercial classifications, which include a storm water runoff fee, imposed on residential dwellings with five or more units, as opposed to dwellings with less units or single family dwellings, is not rationally related to the City's legitimate objectives of equal apportionment of storm water runoff costs to its customers. The City's arguments supporting its rationale for the classification is not appropriate at this stage of the proceedings.

Here, the Court concludes that the City's Rule 12(b)(6) arguments concerning the reasonableness of its classification are more appropriate at the Rule 56(c) stage or at trial when the parties have had an opportunity to develop the factual record. *See Alexander v. City of Detroit*, 392 Mich. 30, 219 N.W. 2d 41 (1974) (relying on the "careful findings of fact of the able trial judge" in holding the City's ordinance classifying multiple dwellings of more than four units as commercial for purposes of assessing fees for refuse collection services was a violation of the equal protection clauses of both the Michigan and United States Constitutions.) *Id.* at 36;[4] *Land v. City of Grandville*, 2 Mich. App. 681, 141 N.W.2d 370 (1966) (holding classification was based on "natural distinguishing characteristics" and bore a reasonable relation to the object of the classification after hearing testimony and considering the parties briefs); *Village Green of Lansing v. Board of Water &Light*, 145 Mich. App. 379; 377 N.W.2d 401 (1985) (affirming the trial court's opinion that the defendant city's classification comported with the equal protection clause after it heard fifteen days

---

[4] The Court need not resolve the City's argument that *Alexander* is distinguishable from the present action because it concludes that dismissal under either Rule 12(b)(6) or 12(c) is unwarranted and the parties should be afforded an opportunity to develop the factual record in support of their claims and defenses.

of testimony and reviewed a voluminous record).

The City's arguments are not appropriate at this stage of the proceedings, therefore the Court denies its Rule 12(b)(6) and/or 12(c) Motion to Dismiss.

### B. Plaintiffs' Motion to Certify Class

#### 1. Standard of Review

Federal Rule of Civil Procedure 23 governs class certification. *See* Fed. R. Civ. P. 23. "While [a] district court has broad discretion in certifying class actions, it must exercise that discretion within the framework of Rule 23." *Coleman v. GMAC*, 296 F.3d 443, 446 (6th Cir. 2002). "The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F. 3d 1069, 1079 (6th Cir. 1996). "[B]oth the Supreme Court and this Circuit require that a district court conduct a 'rigorous analysis' of the Rule 23(a) requirements before certifying a class." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F. 3d 618, 629 (6th Cir. 2011).

Rule 23(a) contains four prerequisites-numerosity, commonality, typicality and adequacy of representation- that must be met before a class can be certified. *See* Fed. R. Civ. P. 23(a)(1)-(4). Once the party satisfies all of the conditions of Rule 23(a), he or she must also demonstrate that the class fits under one of the three subdivisions of Rule 23(b).

#### 2. Rule 23(a) Requirements

##### a. Numerosity

The numerosity factor requires examination of the specific facts of each case and imposes no absolute limitations. *See Senter v. General Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976), cert. denied, 429 U.S. 870 (1976). The modern trend for meeting the numerosity factor is to require at a minimum "between 21 and 40" class members. *See Rodriguez v. Berrybrook Farms,*

*Inc.*, 672 F. Supp. 1009, 1013 (W.D. Mich. 1987); *see also Roman v. Korson*, 152 F.R.D. 101, 105-06 (W.D. Mich. 1993). Here, Plaintiffs argue that preliminary discovery provided by the City demonstrates there are "easily hundreds if not in excess of a thousand members that meet the proposed class definition."

The majority of the City's objection to class certification is based on the faulty premise that Plaintiffs' claims are barred by *res judicata*. The Court has already declined the City's seemingly novel invitation to apply the doctrine of *res judicata* to bar Plaintiffs' constitutional claims, rather the issue is whether the release language in the *Village Center* Settlement Agreement bars Plaintiffs' present claims despite the public interest, among other factors to be considered under *Rumery* and its progeny. In any event, the City's argument concerning the numerosity requirement is perplexing considering the City argues the Plaintiffs and proposed class are identical to the *Village Center* class members and the City stipulated to class action treatment in the *Village Center* action. The Court concludes that Plaintiffs have satisfied the numerosity requirement.

### b. Commonality

Under the commonality requirement "the interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998). Here, there are common questions of law including whether the commercial classification bears a reasonable relationship to the objective of the City, whether the classification is based on natural distinguishing characteristics which bear a reasonable relationship to the object of the classification, and whether the classification is arbitrary. Indeed, in the *Alexander* case, *supra*, class certification was granted in a cause of action against the City based upon a nearly identical classification.

While the majority of the City's opposition to certification is its theory that *res judicata* bars Plaintiffs' claims, the City does make an unavailing argument relying on *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011) to suggest that the Court should delve into the merits of Plaintiffs' equal protection claim to determine whether class action treatment is appropriate. This matter is unlike *Wal-Mart Stores*, which dealt with Title VII employment in discrimination claims and such claims involve an individualized inquiry. No such individualized inquiry will be needed to resolve Plaintiffs' equal protection claim. Plaintiffs have satisfied the commonality factor.

### c. Typicality

A plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re American Medical Sys.*, 75 F.3d at 1078. Here, Plaintiffs' equal protection claim is based on the same legal theory; specifically that the classification of Plaintiffs and the proposed class as commercial for purposes of apportioning charges for storm water run off services violates the equal protection clause. The typicality requirement is also satisfied.

### d. Adequacy of Representation

In order to meet the adequacy test, Plaintiffs "must have common interests with unnamed members of the class" and "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525; *Stout v. JD Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). Defendant fails to address this prong of Rule 23(a). Here, the Court concludes that Plaintiffs' counsel has many years of experience practicing in the area of municipal issues, including dealing with water and sewerage disputes. Moreover, Plaintiffs' counsel has represented that they will vigorously prosecute the interests of the class. Plaintiffs also satisfy the

adequacy of representation test.

### 3. Rule 23(b) Requirements

As to Rule 23(b), Plaintiffs argue that certification is appropriate under Rule 23(b)(1)(A), 23(b)(2) and 23(b)(1)(3). Pursuant to 23(b)(1)(A), a class action may be maintained if "[p]rosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ." Fed. R. Civ. P. 23(b)(1)(A). The Court agrees with Plaintiffs. If individual actions are brought, inconsistent results may occur requiring the Defendant to engage in incompatible standards of conduct with respect to its billing for water and sewage removal services. As such, certification is warranted under Fed. R. Civ. P. 23(b)(1)(A).

The Court further concludes that certification is warranted under Rule 23(b)(2), which states that class certification is appropriate if "[t]he party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Court reiterates that Defendant offers no opposition to certification other than its argument concerning *res judicata*, which the Court has found to be without merit. Based on the foregoing the Court concludes that class certification is warranted under Fed. R. Civ. P. 23(b)(1)(A) and (b)(2).

### IV. CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED that Defendant's Motion to Dismiss [#22] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Certify Class [#20] is GRANTED.

IT IS FURTHER ORDERED that the Court certifies a class, pursuant to Fed. R. Civ. P.

23(b)(1)(A) and (b)(2), consisting of the following:

> All entities or individuals owning, or acting for owners of, buildings, apartment buildings, townhouses, housing cooperatives and condominiums with multiple units and utilized for residential purposes whom and which have been charged at a commercial rate by the City of Detroit and/or the Detroit Water and Sewerage Department for water and sewerage and component services with the time period at least six years prior to the filing of this action through the date of final judgment or such longer amount of time as may be allowed by law.

IT IS FURTHER ORDERED that Randall Pentiuk and Kerry Morgan of Pentiuk, Couveur & Kobiljak, P.C., and Eric S. Goldstein of Johnston, Sztykiel, Hunt, Goldstein & Fitzgibbons, P.C., are appointed as class counsel pursuant to Fed.R.Civ.P. 23(g).

IT IS FURTHER ORDERED that Plaintiffs' Renewed Motion to Certify Class [#38] is MOOT.

IT IS FURTHER ORDERED that Defendant's Renewed Motion to Dismiss [#45] is MOOT.

IT IS FURTHER ORDERED that a **Status Conference will be held on March 4, 2014 at 2:00 p.m.** The parties shall be prepared to discuss the post-certification schedule for the instant matter.


Dated: March 3, 2014                             /s/Gershwin A Drain
                                                 GERSHWIN A. DRAIN
                                                 UNITED STATES DISTRICT JUDGE